UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Delbert Pickens, et al.,                                    Case No. 3:15-cv-2429

        Plaintiffs

    v.                                                MEMORANDUM OPINION

MetalTek International, Inc., et al.,

        Defendants

## I.    Introduction

Defendant MetalTek International, Inc. moved for summary judgment on all claims filed by Plaintiffs Delbert Pickens (Doc. No. 32), Robert Hamlin (Doc. No. 33), and Shawn Batch (Doc. No. 34). In response, Plaintiffs filed a joint opposition to these motions. (Doc. No. 47). Defendant filed a brief in reply as to each individual Plaintiff. (Doc. Nos. 52, 53, 54).

## II.    Background

MetalTek produces castable metal products at its Sandusky, Ohio facility, composed of a machine shop and a foundry. Pickens and Hamlin were employed in the foundry; Batch, the machine shop. In June 2015, all three men were terminated. Hamlin was discharged for cause, and Pickens and Batch were subsequently laid off. Prior to their terminations, all were approved for and took FMLA leave.

A.    Layoff

The layoff at issue was the result of a decrease in orders and a corresponding reduction in revenue. (Doc. No. 32-2 at 2; Doc. No. 34-2 at 2). To determine which employees to layoff, MetalTek applied the standard of "seniority with ability considered," as required by the union

agreement. (Doc. No. 37-1 at 42). Pursuant to an arbitrator's ruling, the two-fold process began with a determination of ability then considered "seniority as a final." (Doc. No. 42 at 7).

Both the foundry and the machine shop used a matrix to complete the selection process. (Doc. Nos. 43, 44). The supervisor of each respective department assessed the employees within his department by assigning points for skill set, attendance, and write-ups. In the foundry, employees earned skill set points based on the ability to perform specific tasks. (Doc. No. 42 at 4-5, 13-14; Doc. No. 43). But in the machine shop, an employee's job classification alone determined the number of skill set points assigned. (Doc. No. 42 at 11, 14; Doc. No. 44). Both departments determined attendance points by calculating the average number of absences per month during the six months preceding the layoff. (Doc. No. 42 at 9, 11). FMLA absences were excluded from this computation. *Id.*

After all points were assigned and seniority considered, Pickens and Batch were each selected for layoff. Pickens received the lowest number of points of all foundry employees and had been working at the company for nearly four years. Batch was one of two employees in the machine shop to earn the lowest number of points and had been working at MetalTek for only a year and a half.

In total, nine employees from the foundry and seven employees from the machine shop were selected for layoff in June 2015. (Doc. No. 32-2 at 3; Doc. No. 34-2 at 3). Of the sixteen employees, twelve were Caucasian, three were African-American, and one was Hispanic. *Id.* Pickens and Batch were two of the three African-American employees who were selected for layoff. Pickens and Batch were also two of three employees selected for layoff that had taken FMLA leave in the preceding year. *Id.*

B.     Termination of Robert Hamlin

During Hamlin's nearly four years of employment at MetalTek, he was disciplined numerous times both before and after he began taking FMLA leave. (Doc. No. 38-1 at 31-37). Hamlin was

2

disciplined not only for job performance issues, but also for his conduct toward a female employee, smoking on company property, and violating the company cell phone policy. *Id.* Due to his lengthy disciplinary history, Hamlin was warned in March 2015, that "he was out of chances and any further issues [would] result in termination." *Id.* at 40. Two months later, Hamlin violated the company cell phone policy once again and was terminated. *Id.* at 41.

### III. STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When considering a motion for summary judgment, all evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV. DISCUSSION

All Plaintiffs assert their terminations violated the FMLA. Additionally, Pickens and Batch also claim MetalTek unlawfully selected them for layoff because of their race. MetalTek moved for summary judgment on all claims. (Doc. Nos. 32, 33, 34).

All claims at issue are analyzed under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 197-98 (1981) (Ohio race discrimination); *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 381-83 (6th Cir. 2017) (FMLA retaliation); *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427-32 (6th Cir. 2014) (FMLA interference)[1]. Under *McDonnell Douglas*, the plaintiff must first prove a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. If the plaintiff can establish a *prima facie* case, the defendant employer must articulate some "legitimate, nondiscriminatory reason" for the action

---

[1] Although the case law is somewhat unclear regarding whether *McDonnell Douglas* applies to FMLA interference claims, the parties each apply this framework to their analysis in briefing. As such, I will also apply this framework for purposes of this case.

4

taken. *Id.* at 802. Only after these two steps are satisfied does the burden shift back to the plaintiff who must establish that the employer's stated reason is a mere pretext for discriminatory conduct. *Id.* at 804-05.

A.  Ohio Race Discrimination

Under Ohio law, an employer may not discharge an employee without just cause because of their race. O.R.C. § 4112.02(A). To establish a prima facie case of race discrimination, each plaintiff must demonstrate:

> (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.

*White*, 533 F.3d at 391.[2] Further, because this is a reduction-of-force case, to satisfy the fourth element, Pickens and Batch "must provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 431 (6th Cir. 2012) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). This additional "evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of [protected class]." *Barnes*, 896 F.2d at 1466.

MetalTek concedes the first three elements are satisfied but maintains there is no evidence to support the fourth. (Doc. No. 32-1 at 9; Doc. No. 34-1 at 10). Confusingly, neither Pickens nor Batch attempt to demonstrate this final element. Rather, both mistakenly assert MetalTek conceded a prima facie case had been established and make no reference whatsoever to the heightened burden of reduction-of-force cases. (Doc. No. 47 at 17). Because both Pickens and Batch fail to identify any portion of the record to demonstrate he was "singled out" for layoff because of his race, each

---

[2] Ohio courts generally apply federal case law interpreting Title VII race discrimination to race discrimination claims asserted under O.R.C. § 4112.02. *See also Plumbers & Steamfitters Joint Apprenticeship Comm.*, 66 Ohio St. 2d at 196.

5

neglects his burden of establishing a prima facie case of race discrimination. *See Celotex*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"); *Guarino v. Brookfield Tp. Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992) ("Rule [56] requires the non-moving party to do its own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues."); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citation omitted) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact."). Therefore, MetalTek is granted summary judgment as to this claim.

B. Family Medical Leave Act

A claim under the FMLA may take two forms: (1) interference or (2) retaliation. *See* 29 U.S.C. §§ 2614(a) & 2615(a); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003). All Plaintiffs assert both, claiming MetalTek violated the FMLA by interfering with their right to take FMLA leave to which they were entitled and retaliated against them for taking FMLA leave.

1. Interference

When analyzing a claim under the "interference" or "entitlement" theory, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Arban*, 345 F.3d at 401 (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). To establish an interference claim, each Plaintiff must show:

> (1) he is an eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled.

6

*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

MetalTek concedes the first four elements are met but asserts there is nothing in the record to support the allegation that it denied Plaintiffs their right to take FMLA leave. Each Plaintiff testified that he could not remember a time he was denied an FMLA leave requested or was discouraged from taking FMLA leave. (Doc. No. 36 at 12-15, 29; Doc. No. 37 at 23-24; Doc. No. 38 at 24). Instead, to satisfy the final element, each rely on the termination itself, stating he was denied the FMLA leave he was approved to take in the future. (Doc. No. 47 at 17-18). But, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, [ ] if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401 (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)); *see also* 29 C.F.R. § 825.216 (a)(1). As such, the only question remaining is whether each Plaintiff would have been discharged even if he had he not taken FMLA leave.

Here, Hamlin's multiple violations of company policy both before and after he began taking FMLA leave resulted in his termination. Because there is no dispute that Hamlin committed the conduct in violation of company policy which resulted in his discharge, I conclude his termination was unrelated to his FMLA leave and grant summary judgment to MetalTek. *See, e.g., Pharakhone v. Nissan North America*, 324 F.3d 405, 408 (6th Cir. 2003) (holding an employee "was discharged because he violated [the company's] policy, and not because he took FMLA leave.").

With respect to Pickens and Batch, each were laid off after the ability and seniority assessment was performed. Both received the lowest "ability" scores in their respective departments. While there were points assessed for the number of absences, FMLA leave absences were excluded from the calculation. Both contest they received lower "ability" scores because their individual supervisors' distaste of their use of FMLA leave. But because neither point to any record

7

evidence to support the allegation, I conclude it to be merely speculative and insufficient to establish a prima facie case. Therefore, MetalTek is granted summary judgment as to the FMLA interference claims asserted by each Plaintiff.

2. Retaliation

Under the "retaliation" or "discrimination" theory, employers may not "discriminat[e] or retaliate[e] against an employee ... for having exercised…FMLA rights" or "use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *see also Arban*, 345 F.3d at 403. To establish a prima facie case of FMLA retaliation, each Plaintiff must show:

> (1) he engaged in an activity protected by the Act, (2) this exercise of his protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action.

*Tennial*, 840 F.3d at 308 (citing *Arban*, 345 F.3d at 404); *see also Marshall*, 854 F.3d at 381. A "causal connection" for purposes of the fourth element requires the plaintiff to "show some type of retaliatory intent." *Tennial*, 840 F.3d at 308.

As with the previous claims, MetalTek concedes the first three elements are satisfied but asserts there is no evidence of a causal connection between Plaintiffs' terminations and FMLA leave. (Doc. No. 32-1 at 14; Doc. No. 33-1 at 11; Doc. No. 34-1 at 15). But like the race discrimination claims, Plaintiffs again mistakenly assert MetalTek conceded that a prima facie case was established and neglect to address the disputed element. (Doc. No. 47 at 17). As such, because Plaintiffs fail to set forth any facts from the record to demonstrate the fourth element, MetalTek is granted summary judgment on the claim of FMLA retaliation.

C. Pretext

Even if Plaintiffs were able to establish a prima facie case with respect to any of the claims, none would survive summary judgment. All Plaintiffs concede that MetalTek has proffered a legitimate business reason for their respective terminations, satisfying MetalTek's burden under the second step of the *McDonnell Douglas* framework. (Doc. No. 47 at 18). Therefore, the burden shifts

8

back to Plaintiffs to prove MetalTek's proffered legitimate business reason for discharge was in fact a pretext for discrimination.

Pretext may be demonstrated "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Generally, plaintiffs satisfy this burden "by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White*, 533 F.3d at 393. But, pretext may also be demonstrated by challenging "the reasonableness of an employer's decision…to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576-77 (6th Cir. 2003) (citing cases analyzing whether an employer's business decision was reasonable or a guise for discrimination).

1. Hamlin

To prove pretext, Hamlin asserts the violation of the phone policy was not sufficient to justify his discharge. (Doc. No. 47 at 22). Specifically, he asserts that other employees who violated the cell phone policy in the same manner were not terminated.

Pretext may be demonstrated by "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009). The "other employees" considered for this analysis are those "similarly situated." *Riley v. PNC Bank, Nat'l Ass'n*, 602 F. App'x 316, 321 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). A "similarly situated" employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would

9

distinguish their conduct or the employer's treatment of them for it." *Ercegovich*, 154 F.3d at 352 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Here, Hamlin fails to demonstrate he had a "similarly situated" coworker from which he was treated differently. Although all members of the foundry had the same supervisor, Hamlin does not allege any coworker had a comparable disciplinary record. Additionally, though Hamlin claims using a cell phone in the guard shack was common practice and "*de facto* permitted in the workplace," he fails to set forth any evidence to support the assertion. Because Hamlin provides no evidence that other employees were permitted to violate the company cell phone policy in this manner, let alone ones with his lengthy disciplinary history, Hamlin's argument for pretext must fail.

2.   Pickens & Batch

Pickens and Batch claim they were improperly selected for layoff because of their race or their use of FMLA leave. Each argues that the matrix used did not accurately reflect his qualifications but was instead a guise for discrimination. In sum, neither asserts the number of points assigned was incorrect. Rather, each claims he would have earned a greater number of points, through a greater skillset or fewer write-ups, had his supervisor not acted in a racially or FMLA discriminatory manner while the men were employed by MetalTek.

To support the allegation of racism, Pickens and Batch claim MetalTek "foster[ed] an environment in which racially unacceptable behavior was tolerated." (Doc. No. 47 at 20). But neither provide evidence of the alleged tolerance. Batch and Pickens each testified neither ever heard a supervisor or coworker use a racial slur. (Doc. No. 36 at 24-26; Doc. No. 38 at 19). While each cite to racially-charged graffiti, neither could identify the source and neither claim such conduct was endorsed by anyone at MetalTek.[3] Additionally, neither provide evidence that their race affected

---

[3] Pickens recalled two incidents in which he found the word "monkey" written in the dust by an anonymous source. After the second incident, Pickens informed his supervisor, who agreed the behavior was inappropriate but could not take action without knowing the author. (Doc. No. 36 at 23-24).

job assignment or training, as they allege. Ultimately, Pickens and Batch each rely on "vibes," feelings, and beliefs alone to support the allegation of racism. (Doc. No. 36 at 23, 25-26; Doc. No. 37 at 19-22). Because "rumors, conclusory allegations and subjective beliefs…are wholly insufficient evidence to establish a claim of discrimination as a matter of law," *Mitchell*, 964 F.2d at 585, Pickens and Batch fail to establish the layoff was a pretext for racism.

Likewise, the assertion that the matrix reflected the supervisors' disapproval of FMLA leave is similarly unsupported. Both Pickens & Batch cite to his own testimony that he felt as if he was treated differently or more harshly after taking FMLA leave. But neither could recall a time in which a supervisor said anything negative about his FMLA leave or a time in which he was discouraged from or disciplined for taking FMLA leave. (Doc. No. 36 at 26-29; Doc. No. 37 at 22-23, 25). Additionally, FMLA-related absences were not factored into the number of attendance points assigned in the matrix. As such, because there is no evidence of a nexus between use of FMLA leave and selection for layoff, neither Pickens nor Batch is able to prove the layoff was a pretext for FMLA discrimination.

V.     CONCLUSION

For the foregoing reasons, summary judgment is granted to MetalTek on all claims.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

Batch testified that when he began working at MetalTek he was notified of an incident regarding inappropriate graffiti by a fellow black coworker. (Doc. No. 37 at 21-22). But during his time at the company, Batch never personally observed any inappropriate graffiti or knew of any other incidence of discrimination at the facility. *Id.* Batch also testified that his coworkers advised him to be less "street" and that he was being singled out for discipline. Each of these assertions are hearsay statements, and therefore may not be considered evidence for purposes of summary judgment. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment.").